INTERNATIONAL HIDE & SKIN CO. v. UNITED STATES.

(Circuit Court, S. D. New York. November 4, 1909.)

No. 5,326.

CUSTOMS DUTIES (§ 38*)—CLASSIFICATION—SHEEPSKINS—"FURS."

Sheepskins, purchased indiscriminately and imported unsorted, without regard to any particular use to which they might be adapted, and not shown to be used as furs, are not classifiable as "furs," or "fur skins," under Tariff Act July 24, 1897, c. 11, § 2, Free List, pars. 561, 562, 30 Stat. 198 (U. S. Comp. St. 1901, p. 1683).

[Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 4, p. 3009.]

On Application for Review of a Decision by the Board of United States General Appraisers.

The decision below affirmed the assessment of duty by the collector of customs at the port of New York; the opinion filed by the Board of General Appraisers being as follows:

McCLELLAND, General Appraiser. The merchandise in question consists of sheepskins. The growth thereon was returned by the appraiser as wool of class 3, unwashed, upon which duty was assessed at the rate of 3 cents per pound, under tariff Act July 24, 1897, c. 11, § 1, Schedule K, pars. 358, 360, 30 Stat. 183 (U. S. Comp. St. 1901, pp. 1665, 1666), based upon the weight thereof as ascertained by the appraiser. The merchandise is claimed to be China sheepskins, used for manufacturing fur coats only, and entitled to free entry either under paragraph 561 or paragraph 562 of said act (section 2, Free List, 30 Stat. 198 [U. S. Comp. St. 1900, p. 1683]).

In abstract decision 17,754 (T. D. 28,634) the Board passed upon and determined a similar question in favor of the protestants' claim; but in that case, while it appears that the skins were of the China sheep, as in the case at bar, they were shown to have been carefully selected for use in the making of fur coats, while the record here shows that the skins involved were unsorted and purchased indiscriminately, without regard to any particular use to which they might be adapted. This is shown by the testimony of the secretary of the importing company. "Q. Do you know what these skins are used for? A. Yes, sir. Q. What is their use? A. Principally coats. Q. Did you sell them to manufacturers of fur coats? A. Some of them might have been sold to a mitten manufacturer or a glove manufacturer. It is pretty difficult to state without referring to our books. Q. Are the skins of a special character? A. Why, the short and the medium hair skins are sold for fur coat purposes, and the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

long fur the skins are sold to mitten manufacturers to make a mitten out of. * * * Q. You purchased these skins indiscriminately in China, or did you purchase them as fur skins? A. Why, they are purchased indiscriminately."

It also appears from the testimony of this witness that one-third of the importation involved in protest 284,738 was sold unsorted to a tanner to be made into leather. Since there was no separation of the skins claimed to be suitable for use only in the making of fur coats from the ordinary skins with the wool on, it is impossible for the Board to make a finding of the percentages of each, and therefore the protests must be overruled, and the decision of the collector in each case affirmed.

Hatch & Clute (Walter F. Welch, of counsel), for importers.
D. Frank Lloyd, Deputy Asst. Atty. Gen., for the United States.

MARTIN, District Judge. Decision affirmed.